RUBY CALDWELL *v.* JAMES H. GLASSCOCK, ET. AL.

[Abstract Kentucky Law Reporter, Vol. 6—513.]

**Construction of Will.**

After a testator had provided by his will for his wife, he provided that the remainder of his estate should be divided among his children and their heirs, "deducting from the shares of the following named children the amounts made to them, namely * * * Kate Caldwell, four hundred dollars for a negro girl and horse and saddle, and besides which I give her daughter, Ruby Caldwell, one thousand dollars, as her legacy in full in my estate." Held that where his

daughter, Kate Caldwell, died before he did, that Ruby took only the one thousand dollars and no more.

### APPEAL FROM NELSON CIRCUIT COURT.

January 31, 1885.

OPINION BY JUDGE LEWIS:

The question presented in this case is whether appellant, Ruby Caldwell, is entitled under the will of her grandfather, Micajah Glasscock to anything more than the $1,000 especially bequeathed to her.

The will is dated June 16, 1881, and it as well as two codicils is wholly in the handwriting of the testator. After making provision for his wife in the first clause the testator proceeds as follows:

"Second. It is my will and desire that the remainder of my estate, real and personal, be divided among my children and their heirs as herein set forth; first paying all my just debts and funeral expenses and deducting from the shares of the following named children the amounts made to them namely: Sallie E. Berkley, five hundred dollars for a negro girl and horse and saddle, etc.; Kate Caldwell four hundred dollars for a negro girl and horse and saddle and besides which I give her daughter, Ruby Caldwell, one thousand dollars as her legacy in full in my estate, etc."

The remainder of the will contains merely a recital of the different species of property and value and amount of money he had given his children, except the last clause which is as follows:

"Also I give and bequeath to Micajah Blaydes, son of Dr. G. W. Blaydes, and Annie Blaydes, his wife, five hundred dollars to be kept at interest for his benefit until he becomes of age."

The two codicils are nothing more than recitals of gifts made to his different children after writing the will.

It is not affirmatively stated in the pleadings nor proved that Kate Caldwell, the mother of Ruby was dead, at the date of the will, though it is alleged and not denied she died before the testator. As in our opinion the construction of the will as it affects appellant, her daughter, depends upon whether she was dead when the will was made, it becomes an important inquiry.

It is manifest that the testator not only methodically and carefully kept an account of all gifts made to his children before he

died, but had a definite and fixed plan as to the disposition of the residue of his estate after providing for his wife, that was not varied or changed. And that plaintiff was to divide such residue among his children and their heirs, using his language, "as herein set forth first paying all my just debts and funeral expenses and deducting from the shares of the following named children the amounts made to them heretofore, namely."

Giving the language of the will its ordinary and obvious meaning it is difficult to avoid the conclusion that Kate Caldwell, the mother, was dead when it was written and that the testator intended Ruby Caldwell, the daughter, to take under it one thousand dollars and no more.

In the first place if all his children had been then living it is not probable that the testator, who has shown more than ordinary intelligence and precision in the use of language, would have said he desired to divide his property between his children and their heirs, for in such case the use of the words "their heirs" would have been unnecessary and inappropriate.

In the second place if he had intended simply to divide his estate equally amongst his children and "their heirs" after deducting advancements, he would have said so in terms, or else would have omitted the words "as herein set forth" which would leave all upon an equal footing.

We are bound therefore to conclude that the testator had a purpose in the use of the following "and besides which I give to her daughter, Ruby Caldwell, one thousand dollars as her legacy in full in my estate." And moreover, that they were intended by him to make a disposition of his estate in respect to her different from what he made in respect to his children, and different from what she would have taken without a will.

The language indicates that not only the amount devised to her was considered in connection with and determined by what he had previously given to her mother but also that the testator was aware that if not restricted by the will Ruby Caldwell would share equally with the other devisees, and therefore used the words "as her legacy in full in my estate."

As evidence that the mother was then dead, and that the testator used the language quoted for a purpose and with full knowledge of the meaning of it, no restriction or condition was annexed to the

gift made to his other grandchild Blaydes, because it was not necessary, his mother being alive and entitled under the will to share.

The words "in full" signify all, and that the phrase quoted means that the testator intended to give to his grand-daughter Ruby Caldwell, one thousand dollars, which was to be all she should take under the will of his estate. In our opinion to give the language used a materially different meaning would be to pervert the meaning beyond reasonable limits.

Judgment *affirmed*.

Chief Justice Hines dissenting.

*E. E. McKay, for appellant.*

*Wm. Lindsay, Geo. S. Fulton, for appellees.*